IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, an Illinois Corporation, ROYAL INDEMNITY COMPANY, a Delaware Corporation, and AMERICAN AND FOREIGN INSURANCE COMPANY, a Delaware Corporation, | ) ) ) ) ) ) | Civil Action No. 00-2128<br><br>The Hon. Francis X. Caiazza Chief Magistrate Judge |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LATROBE CONSTRUCTION COMPANY, | ) ) | |
| Defendant. | ) | |

**MOTION FOR CERTIFICATION PURSUANT TO RULE 54(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE OR, IN THE ALTERNATIVE, CERTIFICATION PURSUANT TO 28 U.S.C. §1292(B)**

COMES NOW the Defendant, Latrobe Construction Company, by and through its counsel, Pietragallo Bosick & Gordon, LLP, and avers the following:

1.     Pursuant to Order of Court dated December 15, 2004, the above-captioned matter was to be tried in two phases. The initial phase was to address claims handling issues. The subsequent phase would address damages. (Doc. 118)

2.     This Court's Order of December 15, 2004 provided that the handling of the 21 claim files would and must be addressed by the Court and the parties at trial. (*See* Order of Court dated December 15, 2004, Doc. 118, pp. 1-4.)

3.     Before trial, the parties stipulated that Defendant had met its burden of production on the 21 claims and that Plaintiffs would bear the burden of proof to demonstrate that they handled the 21 claims reasonably and in good faith. (Doc. 122).

4.    Between February 2005 and April 2005, the parties presented evidence in Phase I of the proceeding, which addressed claims handling issues.

5.    On January 6, 2006, this Court issued its Findings of Fact and Conclusions of Law relative to Phase I (hereinafter referred to as "Findings").

6.    In its Findings, the Court found that the parties had entered into a Stipulation wherein the Plaintiffs would bear the burden of persuasion that they acted reasonably and in good faith with regard to the handling of 21 claims files.  (*See* Findings of Fact and Conclusions of Law filed 1/06/2006, p. 12.)

7.    Through the Stipulation, the Plaintiffs accepted the burden of proof regarding the reasonableness of the manner in which they handled all 21 claims.

8.    At trial, the Plaintiffs offered evidence of their alleged good faith and reasonableness as to only 14 of 21 claims files.  Plaintiffs offered no such evidence on 7 of the 21 claims that were encompassed by the Stipulation.

9.    This Court disregarded its Order of December 15, 2004 and the Stipulation and stated that Plaintiffs were not required to produce affirmative evidence on all 21 claims.

10.    Under federal law, stipulations and admissions in pleadings are generally binding on the parties and the Court.  *See* Parson v. Union Underwear Co., 95 Fed. Appx. 144 (6th Cir. 2004); Federal Deposit Insurance Corporation v. St. Paul Insurance Co., 942 F.2d 1032 (6th Cir. 1988); Gomez v. Rivera Rodriguez, 344 F.3d 103 (1st Cir. 2003); Child Evangelism Fellowship of Maryland, Inc. v. Montgomery Country Public Schools, 368 F. Supp. 2d 416 (Dist. of Md. 2005)

11.    Defendant reasonably and properly relied on the Court's Order of December 15, 2004 in conjunction with the Stipulation reached with the Plaintiffs, that Plaintiffs had the

burden of persuasion to establish that it handled the 21 claim files reasonably and in good faith. As a result of the Stipulation, Defendant was not obligated to offer any evidence to satisfy its burden of production.

12.    In the course of the Findings, the Court determined that the facts and law compel an examination of individual claim files on a case-by-case basis. (*See* Findings of Fact and Conclusions of Law, p. 17; *see also* Findings of Fact and Conclusions of Law, p. 1000-1016, holding that Plaintiffs' claims handling practice must be considered on an individual claim-by-claim basis.)

13.    Notwithstanding the Court's finding that a determination as to whether a claim has been handled reasonably and in good faith must be considered on a claim-by-claim basis, the Court inferred that Mr. Weber's testimony regarding the alleged reasonableness of Royal's claims handling on 14 specific claims, coupled with the absence of specific objections by Ms. Haley, established that Royal had handled reasonably and in good faith the other seven claims. (Findings of Fact and Conclusions of Law filed 1/06/2006, p. 12).

14.    However, Ms. Haley's testified that she was unable to review these seven claims because claim documentation was incomplete. Plaintiffs did not challenge this assertion. Indeed, Plaintiffs' own expert, Peter Weber, conceded that he, too, had not received all documents relating to those claims. (N.T. 2/9/05, pp. 100-101).

15.    Moreover, while Ms. Haley testified that she had not been provided with sufficient documentation to offer an opinion on those seven claim files, she further testified that she learned, just prior to providing testimony in this proceeding, that at least one of the seven claims should not be included in Plaintiffs' demand for damages. contained material errors. Plaintiffs' damages were based, at least in part, on total incurred values in the case of *Younker*

3

This amount should have been completely eliminated because, as Ms. Haley testified, the claim had been successfully defended by Plaintiffs. (N.T. 2/23/05, p. 121).

16.    In the face of the Court's December 2005 Order and the Stipulation, Plaintiffs cannot contend that they were in any way misled. Indeed, Plaintiffs offered into the record the letters of Latrobe's counsel, criticizing all 21 claim files. (T.R. at 124.181 (Weber))

17.    The record thus shows that there was no evidence of Plaintiffs' reasonableness and good faith in the handling of the seven claims. Instead, the evidence establishes the contrary.

18.    Defendant respectfully submits that this Court erred in applying the December 15, 2004 Order and Stipulation.

19.    The effect of this Court's Order of December 15, 2004 and the parties' Stipulation is a material issue that should be addressed before Phase II of this trial is commenced.

20.    The value of the seven claims omitted by the Court exceeds the value of Plaintiffs' total claim against Defendant.

21.    A resolution by the appellate court would allow for certainty on the scope of damages that each party alleges, thereby avoiding the risk of a second trial on damages, should the appellate court determine that this Court erred in applying the December 15, 2004 Order and Stipulation.

22.    Defendant respectfully requests, pursuant to Rule 54(b), that the Court's Findings be deemed a final judgment as to liability, permitting the Defendant an appeal as a matter of right.

23.     In the alternative, and in consideration of 28 U.S.C. §1292(b), Defendant requests that the Court consider certifying its Findings and Order issued in Phase I to permit an appeal from an interlocutory order.

24      The effect of this Court's December 15, 2004 Order and the Stipulation of the parties presents a controlling issue of law.

25.     The Defendant could identify no federal case law in any jurisdiction that would hold that a stipulation of fact entered into between the parties is not binding upon the court and parties.

26.     The Defendant anticipates that Phase II of the litigation could run as many 20 trial days.

27.     An immediate appeal would materially advance the ultimate termination of the case in that the possibility of multiple damage trials would be precluded.

## MOTION FOR RECONSIDERATION/AMENDMENT OF THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE WERDER CLAIM PURSUANT TO RULE 52(B), FEDERAL RULES OF CIVIL PROCEDURE 59(E) OR, IN THE ALTERNATIVE, MOTION TO CERTIFY ISSUE FOR APPEAL

28.     It is undisputed that Mr. Werder was killed on May 15, 1992 in the course and scope of employment with Latrobe. (N.T. 69, 2/9/05).

29.     Through the testimony offered, Plaintiffs failed to satisfy their burden of proof regarding the appropriateness of claims handling in this matter.

30.     At issue is whether the decedent's wife, Jaci Werder, and her two children from a former marriage, were entitled to benefits.

31.    At the time of Mr. Werder's death, Jaci Werder was living apart from the decedent. (N.T. 63, 2/24/05).

32.    Pennsylvania law establishes that, in order to receive benefits, the claimant must prove both dependency and receipt of support from the decedent.

33.    Section 307 of the Pennsylvania Workers' Compensation Act states, in relevant part:

> ". . . No compensation shall be paid under this section to a widow, unless she was living with her deceased husband at the time of death, or was then actually dependent upon him <u>and</u> <u>receiving</u> from him a substantial portion of her support . ."

(Emphasis added)

34.    At trial, Plaintiffs' claims handler, Sheila Breitfeld, testified that such is the standard.

35.    Sheila Breitfeld, who ultimately became responsible for the Werder claim, recognized that Section 307 of the Workers' Compensation Act requires not only a showing of dependency, but a demonstration that the dependent was receiving support at the time of the spouse's death (N.T. 57, 3/1/05, emphasis added).

36.    It would appear that an investigation was not conducted to address Jaci Werder's dependency. Even if such an investigation was undertaken, there was no showing that Plaintiffs ever determined whether Jaci Werder received any support at the time of her spouse's death.

37.    Plaintiffs thus failed to submit any evidence justifying Jaci Werder's receipt of benefits. More importantly, there was no evidence to support Jaci Werder's dependency. The evidence clearly established that Jaci Werder and her husband were living apart at the time of Larry Werder's death. There was no evidence that Jaci Werder was dependent on him for

support.   There was also no evidence developed by Plaintiffs that Jaci Werder was actually receiving support at the time of Mr. Werder's death.

38.   As such, under Pennsylvania law, Jaci Werder was not entitled to benefits.

39.   In that Plaintiffs failed to demonstrate that Jaci Werder was entitled to benefits under Pennsylvania law, Plaintiffs' evidence was insufficient to satisfy their burden of proof that this claim was handled reasonably.

40.   Plaintiffs also failed to demonstrate that they acted reasonably in determining that Jaci Werder's children were entitled to benefits.

41.   The eligibility of Jaci Werder's children as dependents relates to the doctrine of *in loco parentis*.

42.   Royal's defense counsel, Attorney Zuschlag, addressed the burden of establishing a child's status *in loco parentis* in the *Peksa* litigation.   To this end, Mr. Zuschlag authored a letter dated February 28, 1994, which noted, in relevant part:

> "Section 307 of the Workers' Compensation Act provides that compensation shall be payable to members of the decedent's household at the time of his death. The term children shall include stepchildren, adopted children and children to whom he stood in loco parentis . ."

43.   Mr. Zuschlag went on to state that "the critical distinction to make here [in the Peksa litigation] is that the decedent did not live with these children at the time of death. ." Mr. Zuschlag noted that other factors to consider would have been "the father's role in disciplining the children, selecting their clothing, exchanging gifts and greeting cards, and the like." (Zuschlag letter, 8/25/93, Defendant's Exhibit X).

44.   The sole evidence apparently relied upon by Plaintiffs in the current proceedings to establish that it correctly deemed Mrs. Werder's children from her former marriage to be legal

7

dependents of Mr. Werder was an unsigned statement from an unknown witness secured by

Melissa Werder, which alleged that the decedent had taken Christmas gifts (presumably to Jaci

Werder and her children) and had been hurt by the fact that they had not given him a Christmas

present in exchange. (Defendant's Exhibit X – Bates No. 16775).

45.     Cross-examination of Mr. Weber with regard to his conclusions concerning the

children's dependency established:

> that Jaci Werder's prior husband was never consulted as to whether he was
> supporting Jaci Werder and his two children. (N.T. 64, 2/10/05);

> that he was unaware as to whether Jaci Werder and her two children from her first
> marriage were continuously living with Larry Werder from 1983 to the time of
> Mr. Werder's death (N.T. 65, 2/10/05), which is inconsistent with his initial
> assumptions;

> that he did not know whether Jaci and Larry Werder had prior separations that
> would undermine the assumption that Larry Werder, Jaci Werder and her children
> lived together for nine years (N.T. 66, 2/10/05);

> that had Jaci Werder wished to invoke court aid in securing support from her
> husband, she would have had ample time to have done so (N.T. 67, 2/10/05); and

> that there was no indication that Jaci Werder attempted to secure a support order
> against her husband prior to his death (N.T. 67, 2/10/05).

46.     Under Pennsylvania law, the two children from Jaci Werder's former marriage

were not entitled to benefits.

47.     In that Plaintiffs failed to establish that these children were entitled to benefits,

Plaintiffs' evidence was insufficient to satisfy their burden of proof that this claim was handled

reasonably.

48.     Defendant requests that this Court amend its Findings to hold that Plaintiffs did

not satisfy their burden of proof that the *Werder* claim was handled reasonably.

49.    In the alternative, and in consideration of 28 U.S.C. §1292(b), Defendant requests that this Court certify the issue of whether the Plaintiffs met their burden of proof in the Werder claim.

50.    This issue is a controlling question of law and this Court's application of the law is contrary to those holdings issued by the Pennsylvania state courts.

51.    For the reasons set forth above, an immediate appeal of this issue would materially advance the ultimate termination of the case as it would avoid the possibility of multiple damage trials in the event that the Untied States Court of Appeals for the Third Court determines that this Court erred in its application of Pennsylvania law.

WHEREFORE, Defendant Latrobe Construction Company respectfully requests this Court to render its Findings of Fact and Final Order or, in the alternative, certify this matter for interlocutory appeal. Additionally, Defendant seeks amendment of the Court's Findings relative to the *Werder* claim or certification of that issue for appeal.

Respectfully submitted,

PIETRAGALLO, BOSICK & GORDON

By:    s/Mark Gordon, Esq.
       Mark Gordon, Esq.
       PA I.D. No. 25561
       Timothy R. Smith, Esq.
       PA I.D. No. 63282
       One Oxford Centre, 38th Floor
       Pittsburgh, PA 15219
       (412) 263-2000

       Counsel for Defendant/Counterclaim Plaintiff,
       Latrobe Construction Company

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response to the Motion to Leave to File a Supplemental Memorandum in Support of Proposed Findings of Fact and Conclusions of Law has been served upon the following by U.S. Mail this 20th day of January 20, 2006:

Bruce C. Fox, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
One Mellon Center
500 Grant Street, Suite 5240
Pittsburgh, PA 15219

*Counsel for Plaintiffs*

PIETRAGALLO, BOSICK & GORDON

By:    s/Mark Gordon, Esq._____
        Mark Gordon, Esq.
        Timothy R. Smith, Esq.