IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, an Illinois Corporation, ROYAL INDEMNITY COMPANY, a Delaware Corporation, and AMERICAN AND FOREIGN INSURANCE COMPANY, a Delaware Corporation, | ) ) ) ) ) ) ) | Civil Action No. 00-2128<br><br>The Hon. Francis X. Caiazza<br>Chief Magistrate Judge |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LATROBE CONSTRUCTION COMPANY, | ) ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO STRIKE TESTIMONY OF GERALD CHIMENTI

AND NOW, comes Defendant, Latrobe Construction Company ("Latrobe"), by and through its counsel, Pietragallo, Bosick & Gordon LLP, and files this Motion to Strike Testimony of Gerald Chimenti. In support of its Motion, the Defendant avers as follows:

1.  Phase II of the litigation between these parties was to determine: (1) "actual loss" suffered as a consequence of the claims mishandling; and (2) the amount of retrospective premiums due to Royal. (Findings of Fact and Conclusions of Law, 1/6/06, p 103).

2.  Royal's damage claim is based upon the calculations and testimony of its expert, Gerald Chimenti ("Chimenti").

3.  The uncontroverted facts are:

    - There is not a single document that Chimenti purportedly relied upon to assess damages in the case that has been authenticated for accuracy.

    - There is not a single document that Chimenti relied upon that has been established as a business record maintained by Royal that would address the dispute on damages;

- Chimenti did not address earned premiums, premium payments and/or credits in the retrospectively rated plan years between 1974 and 1980, which Chimenti concedes would be necessary to address the issue of what premiums are due to Royal or, alternatively, returnable to Latrobe;

- There are no business records of Royal, which confirm that which was paid by or on behalf of Latrobe in the form of premiums or, alternatively, which reflect a draw-down of collateral to offset premium demands in the retrospective plan years, nor does Chimenti claim that he has ever reviewed such documents;

- Without a factual basis, Chimenti asserts that a Statement of Account and a 1999 letter (Exhibit AS), both of which were provided to him after he had issued his July 10, 2003 report, allowed him to conclude that premiums earned from retrospectively rated plans between 1980 and 1995 were properly billed, paid and credited to the Latrobe account through 1994, inclusive;

- Without a factual basis, Chimenti assumes that no premiums were received from or on behalf of Latrobe after 1999;

- Without a factual basis and without having reviewed a single claim file, Chimenti assumes that the 2002 loss run, provided to him by Royal's counsel, accurately reflected total incurred values that were actually paid out on the Latrobe claims.

4. Royal has offered no evidence that would qualify as a factual foundation for the assumptions that Chimenti has made.

5. The scope of the dispute between the parties relates to retrospectively rated plans in effect from 1974 to 1995. In order to determine whether premium is owed to Royal or, alternatively, returnable to Latrobe, one must establish the financial arrangements and review each retrospectively rated plan year.

6. It is axiomatic that, in a claim for contractual damages, it is incumbent upon the party claiming damages to establish that to which it is entitled (based on that party's performance), that which the party billed, and that which was received by the other party to the contract. See, <u>Technology Based Solutions, Inc. v. Electronics College, Inc.</u>, 168 F.Supp.2d 375

(E.D. Pa. 2001); Perry v. Sonic Graphic Systems, Inc., 94 F.Supp.2d 616 (E.D. 2000); Halstead v. Motorcycle Safety Foundation, Inc., 71 F.Supp.2d 455 (E.D. Pa. 1999).

7. Chimenti offered no testimony that he was specifically aware of financial relationships Royal had with Latrobe with regard to premium payments and/or premium crediting. Chimenti did not know what premiums were directly paid by Latrobe; Chimenti did not know what premiums were paid on behalf of Latrobe through a broker or factor; and Chimenti did not know whether there was collateral in place for the benefit of Royal that would serve to offset Royal's claim for premiums. (N.T. 5/2/06, p. 85).

8. Financial responsibilities under the seven consecutive 3-year retros are dependent. The ultimate responsibility for any payment of additional premium or, conversely, any responsibility for return of premium, cannot be determined unless one reviews the extent to which premium was earned in all open retrospectively rated plans; the extent to which premiums were paid by or on behalf of an insured in each of the plan years; and/or the extent to which premium claims are to be offset as a result of collateral draw-down in each of the plan years.

9. Accordingly, in order to calculate premium obligations of the parties at any date in time, one must review plan data from the initiation of the retrospectively rated programs since 1974. This is the only proper manner to establish the parties' respective net obligations to one another.

10. Chimenti concedes that he did not look at the financial data for the 1974-1980 plan years and could offer no opinion regarding what premiums were billed, paid or returnable in said years. (N.T. 5/2/06, p. 64)

11. Chimenti's assumption, that all premiums billed to Latrobe between 1980 and 1995 were reasonable, properly billed, properly paid and properly credited to Latrobe as of 1994, is not supported by evidence of record.

12. The documents relied upon by Chimenti to determine that all premiums were properly billed and credited included a 1999 letter purported to be from a David Hooper of Royal to Royal's former attorney, Gene Giotto (Ex. AS), and a Statement of Account, which was alleged to have been a summary completed by some unknown person, at some unknown point in time, presumably from some unidentified corporate documents.

13. Chimenti's reliance on these documents is not warranted.

14. The testimony of Dianne Leger, Royal's corporate designee, belies such a reliance. In her deposition, she concedes that the Statement of Account would not reflect that which was actually paid by or on behalf of Latrobe and when it was paid. (Ex. BB, Leger Depo., 9/12/03, pp.58-60).

15. No evidence was offered by Royal that this Statement of Account was a business record, reliable or accurate. Moreover, Royal offered no testimony to establish how the document was prepared, by whom it was prepared, whether the document was accurate and whether it was, in fact, prepared from documents kept in the ordinary course of business by Royal.

16. Chimenti's reliance on the 1999 Hooper letter is also misplaced.

17. Mr. Hooper's letter, in addition to being of questionable admissibility, suggests only that Royal had no problems with the insured paying premiums until the adjustment valued in 1995. (Ex. AS).

18. Contrary to Chimenti's representations, the Hooper letter does not confirm that the historical payments made by or on behalf of Latrobe were properly credited to the Latrobe account.

19. A further and fatal flaw in Chimenti's expert testimony is his reliance upon the accuracy of the incurred loss values as reported in the 2002 loss runs.

20. There is no dispute that the "total incurred values" constitute the most substantial and variable financial component of the calculation of earned premium. (Findings of Fact and Conclusions of Law, p. 5; Exhibit BB, Leger Depo., p. 33).

21. Royal did not offer any witness who could justify Chimenti's reliance on the total incurred values contained in the 2002 loss runs to calculate the earned premium for the 1980-1995 retrospectively rated claim years.

22. There is no reason for the Court to conclude that Chimenti's assumption, that the 2002 loss runs accurately reflected that which was actually paid out by Royal, is founded in fact. In fact, Mr. Chimenti's testimony demonstrated significant discrepancies that Royal could not remedy.

23. It is the burden of the plaintiffs to establish the reliability and fit of Chimenti's testimony by a "preponderance of the proof." See Fed. R. Evid. 702; Soldo v. Sandoz Pharmaceutical Corp., 244 F. Supp. 434 (W.D. Pa. 2003); In Re TMI Litigation, 193 F.3d 613, 663 (3rd Cir. 1999).

24. In this matter, Chimenti has failed to base his opinion upon reliable data.

25. When a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert.

26. The key inquiry is <u>reasonable</u> <u>reliance</u> and that inquiry dictates that the trial judge must conduct an independent evaluation into the reasonableness of the facts or data upon which reliance is placed. <u>In Re TMI Litig.</u>, 193 F.3d 613, 697 (3d Cir. 1999) quoting <u>In Re Paoli R.R. Yard PCB Litigation</u>, 35 F.3d 717, 748-749 (3d Cir. 1994).

27. In this matter, Royal has not presented sufficient evidence to demonstrate that Chimenti's reliance upon the Hooper correspondence, the Summary of Account or the loss runs is justified.

28. The Third Circuit Court of Appeals supports the exclusion of expert testimony that is based upon an insufficient or unreliable factual foundation. See <u>Montgomery County v. Microvote Corporation</u>, 320 F.3d 440 (3d Cir. 2002).

29. It is apparent that the Federal Rules require expert testimony to be accompanied by a sufficient factual foundation. An expert opinion, without sufficient or reliable factual foundation, has the ability to mislead the fact-finder and does not comply with the "fit" requirement of Rule 702.

30. In further support of this Motion to Strike the Testimony of Gerald Chimenti, Latrobe incorporates, by reference, its Brief in Support of the Motion to Strike the Testimony of Gerald Chiment.

WHEREFORE, for the reasons stated herein and in Latrobe's accompanying Brief, Latrobe requests the entry of an Order striking the Phase II testimony of Gerald Chimenti.

          Respectfully submitted,

          PIETRAGALLO, BOSICK & GORDON LLP


          By:   /s/ Mark Gordon
                Mark Gordon, Esq.
                Timothy R. Smith, Esq.

          One Oxford Centre, 38th Floor
          Pittsburgh, PA 15219
          (412) 263-2000 - phone
          (412) 261-5295 – facsimile
          MG@PBandG.com
          TRS@PBandG.com

          Counsel for Defendant/Counterclaim Plaintiff,
          Latrobe Construction Company

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2006, I electronically filed the foregoing **MOTION TO STRIKE TESTIMONY OF GERALD CHIMENTI** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Bruce C. Fox, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
US Steel Tower
600 Grant Street, Suite 5240
Pittsburgh, PA 15219
*Counsel for Plaintiffs*

PIETRAGALLO, BOSICK & GORDON

By:   /s/ Mark Gordon
      Mark Gordon, Esq.
      Timothy R. Smith, Esq.

Counsel for Defendant/Counterclaim Plaintiff,
Latrobe Construction Company