**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROYAL INSURANCE COMPANY OF AMERICA, an Illinois Corporation, ROYAL INDEMNITY CO., a Delaware Corporation, and AMERICAN AND FOREIGN INSURANCE COMPANY, a Delaware Corporation,** | ) | **Civil Action No. 00-2128** |
| | ) | **The Honorable Francis X. Caiazza Chief Magistrate Judge** |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **<u>PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' ENTITLEMENT TO PRE-JUDGMENT INTEREST</u>** |
| **LATROBE CONSTRUCTION COMPANY,** | ) | |
| **Defendant.** | ) | **ELECTRONICALLY FILED** |

Plaintiffs, ROYAL INSURANCE COMPANY OF AMERICA, ROYAL INDEMINITY CO., AMERICAN AND FOREIGN INSURANCE COMPANY (collectively, "Royal"), by and through their attorneys, file this Reply Brief In Support of Plaintiffs' Entitlement to Pre-Judgment Interest, stating as follows:

## I. <u>Royal is Entitled to Collect Prejudgment Interest as a Matter of Right under the Third Prong of *Black Gold*</u>

Royal and Latrobe appear to agree that the four-prong formulation set forth in *Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F. 2d 941 (3d Cir. 1984) governs Royal's entitlement to collect prejudgment interest. In its Memorandum in Opposition to the award of such interest, Latrobe has, unfortunately, misapplied that formulation. In *Black Gold*, the Third Circuit explained that a plaintiff is entitled to prejudgment interest if:

> (1) a defendant commits a breach of contract to pay a definite sum of money; or (2) a defendant commits a breach of contract to render a performance the value of which in money is stated in the contract; or (3) a defendant commits a breach of contract to render a performance the value of which is ascertainable by

> mathematical calculation from a standard fixed in the contract; or (4) a defendant commits a breach of a contract to render a performance of the value of which in money is ascertainable from established market prices of the subject matter.

*Id.* at 943. Royal is clearly entitled to recover prejudgment interest under the third prong of this standard.[1]

Latrobe tries mightily to create the perception that the compensatory damages that Royal is seeking are fluid or unsettled, in order to evade application of *Black Gold.*[2] In reality, it is undisputed that the premiums that Latrobe owes are fixed, liquidated amounts.

Royal is entitled to recover prejudgment interest under the third of the *Black Gold* branches: "a defendant commits a breach of contract to render a performance the value of which is ascertainable by mathematical calculation from a standard fixed in the contract." Latrobe erroneously claims that "[f]actors 2 through 4 relate to contracts requiring specific performance of the Defendant." (Latrobe Memorandum at 4) and that "[t]he contract in question was not. . . for Latrobe's specific performance." (*Id*. at 3).

Latrobe fails to articulate its understanding of the term "specific performance,"[3] and offers no support for its bald assertion that the second, third and fourth of the *Black Gold* prongs encompass only contracts requiring specific performance. Furthermore, Latrobe's payment of retrospective premiums, which is contractually required by the relevant insurance policies, *is*, in fact, "a performance" within the meaning of the third branch of *Black Gold. See*, *Perel v.*

---

[1] In its Trial Brief, Royal asserted that it could prevail under the first and fourth prongs and did not address the third prong. Upon further review of relevant case law, it has become evident that Royal's entitlement to prejudgment interest is also available under the third prong.

[2] In furtherance of this effort, Latrobe peppers its Memorandum with a series of vague phrases that do nothing to advance the analysis: "The formula for the calculation of premiums is variable and subject to change." . . . "At this time, the rights and obligations of the parties remain unsettled." . . . "the evidence demonstrates that the calculation is variable, the programs are still open and, arguable, subject to adjustment."

[3] *Black's Law Dictionary*, Abridged Seventh Edition (2000) defines "specific performance" as "[a] court-ordered remedy…" *Id*. at 1131. Thus, Latrobe's reference to "contracts requiring specific performance" is something of an oxymoron.

*Liberty Mutual Insurance Co.*, 839 A. 2d 426, 429 (Pa. Super. 2003) ("The term 'payment' has been defined as 'performance of an obligation, usually by the delivery of money.'")

Having established that each of the contracts that Royal alleges Latrobe has breached – *i.e.*, the insurance policies - is a contract under which Latrobe is to render a performance - *i.e.*, the payment of retrospective premiums, it remains only to establish that the value of those payments "is ascertainable by mathematical calculation from a standard fixed in the contract."

As the Court is aware, the policies require Latrobe to make annual payments to Royal based on retrospective premium adjustments computed from the incurred losses experienced by Latrobe subsequent to the prior retrospective adjustment. Thus, the policies clearly obligate Latrobe to make a series of annual payments, each of which "is ascertainable by mathematical calculation from a standard fixed in the contract."

The terms of the retrospective premium endorsement for the 1992-93 policy period are typical of the other four such endorsements.[4] This endorsement states that:

> **RETROSPECTIVE PREMIUM.** The retrospective premium for all policies as specified in Table I, Item 1 combined shall be the sum of:
>
> (a) the basic premiums for each state,
> (b) the excess loss premiums for each state,[5] and
> (c) the converted losses for each state,
>
> each multiplied by the applicable state tax multiplier.

(Attach A at 1). The "**Basic premiums**" are, in turn, defined as "the amounts obtained by applying to each portion of the standard premium the basic premium percentage stated in Table II as applicable thereto." The "'**Standard premium'** means the premium for the insurance subject to Plan D computed in accordance with the provisions of the policies other than this

[4] This endorsement is an excerpt from Plaintiffs' Trial Exhibit 1, and is attached hereto as Attachment A.
[5] Excess loss premiums were not an element of Latrobe's insurance program.

endorsement and exclusive of the application of any premium discount endorsement." "'**Converted losses'** means the incurred losses multiplied by the applicable loss conversation factor." *Id.* at 1. Finally, the "Loss Conversion Factor" is set at 1.10, *Id.* at 3, and the Pennsylvania "tax multiplier" is set at 1.046 *Id*. Thus, the Royal retrospective premium endorsement establishes a very specific and precise formula for the computation of the retrospective premiums—one that assures that the retrospective premiums are "ascertainable by mathematical calculation from a standard fixed in the contract," within the meaning of the third prong of the *Black Gold* test.

The conclusion that the retrospective premiums are computed on the basis of a specific formula is buttressed by the testimony of both of the damages experts. For example, Plaintiffs' Trial Exhibit 190, prepared by Plaintiffs' expert, Mr. Chimenti (and attached hereto as Attachment B), employs the identical retrospective premium formula contained in the foregoing endorsement. Similarly, Defendant's Trial Exhibit C, prepared by Defendant's expert, Mr. Raabe (attached hereto as Attachment C) also validates the same formula, as was further confirmed by Mr. Raabe's testimony:

> Q: And then they [the company] plug that figure [the total incurred value] into the retro formula?
> A: That's correct.[6]

(Feb. 8, 2005 Trial Transcript at 55-56).

Thus, Latrobe's own exhibits and expert testimony establish that a single fixed formula, contained in the policies, governed the retrospective premium calculation and serve to refute Latrobe's present assertion that "[t]he formula for the calculation of premiums is variable and subject to change."

---

[6] In referring to the determination of the retrospective premiums, Mr. Chimenti similarly testified that "it's just a mathematical computation to arrive then at the retrospective premium for each of the policy years…" (TT1, pg 42, lines 24-25)

The case law supports Royal's position, as well. *Dade County v. American Re-Insurance Company*, 467 So. 2d 414 (Fla. App. 1985), involved a dispute between an insured and an insurer over whether prejudgment interest accrued on an unpaid retrospective premium. In *Dade*, the insured owed a retrospective premium to the insurer, but delayed several years before tendering payment. At that point in time, however, the insurer took the position that it was owed an additional amount as interest accrued on the retrospective premium during the period of delay.

In the ensuing premium collection action, the court disposed of the same argument that Latrobe makes here:

> In a fall-back argument, [the insured] contends that the retrospective premium it now admits it owes to [the carrier] was not a liquidated sum and, therefore, prejudgment interest would be improper. . . The present test in Florida is that a claim is unliquidated when the amount of damages cannot be computed except on conflicting evidence, inferences and interpretations… Damages or claims are considered liquidated for purposes of prejudgment interest where the amounts of the damages or claims can be computed by simple calculation or where a verdict has the effect of fixing damages or claims as of a prior date.
>
> * * *
>
> *This amount* [sought by the carrier] *was arrived at pursuant to a simple calculation under the equation for determining the retrospective premium set out in the contract.* This is the exact amount alleged by [the carrier] in its counterclaim. Further, [the insured] does not dispute the correctness of this figure and, in fact, concedes that it owed [the carrier] this exact amount under the contract.[7] Accordingly, the trial court correctly ruled that [the carrier's] counterclaim was liquidated for purposes of prejudgment interest.

*Id.* at 418-19 (emphasis added).

In precisely the same way, the simple calculation specified in Royal's retrospective endorsements yielded retrospective premiums owed by Latrobe to Royal, which must be deemed to have accrued prejudgment interest from the time they became due. *See also, Employers Insurance of Wausau v Titan International, Inc.*, 400 F.3d 486,491 (7th Cir. 2005) ("[S]ince the

---

[7] Latrobe has all but conceded the accuracy of Royal's damages calculations, as the values contained in its expert's report are virtually identical to those proffered by Royal's expert. (See testimony of Gerald Chimenti, TT1, pg. 46, lines 12-48, line 2.)

suit was for a precisely calculable amount of money, the district court was acting in conformity with Illinois law in awarding the plaintiff prejudgment interest" on a retrospective premium.)

Moreover, the fact that the policies remain open does not in any way affect the fact that eleven retrospective premiums, from and including the 1995 retro adjustment to and including the 2006 retro adjustment, remain unpaid by Latrobe. (TT1, pg. 120, lines 2-15; Attachment D). Nor does the fact that the policies are still open affect the fact that each of these unpaid premiums was precisely ascertained by the application of a specific mathematical formula contained in the policies, nor does it alter the fact that eleven precise amounts have been due on eleven precise dates and are each, therefore, entitled to have accrued prejudgment interest since they became due. *See Attachment D.* [8]

In *Buys v. Buys*, 924 S.W. 2d 369 (Tex. 1996), the court addressed the entitlement of a spouse to receive payments from her ex-spouse in respect of his military retirement benefits under a property settlement agreement. After concluding that she could recover these payments as a matter of contract right, the court went on to award prejudgment interest on each of the periodic retirement payments.

> Because we hold that [plaintiff] can recover the amounts found by the trial court as a contract right under the property settlement agreement incorporated in the divorce decree, we cannot uphold the lower courts' actions. As [defendant] received each payment for military retirement and Civil Service retirement, [defendant] owed [plaintiff] the fractional amount found by the trial court. *There were a series of certain sums due on ascertainable dates. [Plaintiff] is entitled to pre-judgment interest as a matter of contract right.*

*Id*. at 375 (emphasis added).

---

[8] The only effect resulting from the policies still being open is that Latrobe will be obligated to pay *additional* retrospective premiums to Royal (or receive returns of premium from Royal) annually, attributable to the handful of claim(s) which are not yet resolved out of the 866 at issue, until the retros are closed. The policies specifically provide that "you will pay the premium when due." (*See* excerpt from 1992-93 policy (Plaintiffs' Trial Exhibit 1) attached hereto as Attachment E.). Accordingly, the potential for new retrospective premiums, *in the future*, under the open policies, can have no effect on the eleven payments that have already been due and owing, some for as long as 10 years.

So too here, Royal is entitled under the third prong of the *Black Gold* formulation to collect prejudgment interest, totaling $539,003.43, on a series of eleven certain sums due on ascertainable dates. *See Attachment D.*

## II. **In the Alternative, This Court Should, in Its Discretion, Award Pre-Judgment Interest**

Latrobe and Royal also appear to agree that in the event a party is not entitled to prejudgment interest as a matter of right, "under Pennsylvania law, prejudgment interest may be awarded on a claim involving unliquidated damages at the discretion of the trial court." *Krain Outdoor Displays Inc. v. Tenn. Continental Corp.*, 1986 U.S. Dist. LEXIS 21740 at 3-4. They also agree that the courts consider four factors when determining whether a discretionary award of prejudgment interest is appropriate:

> (1) the diligence of the plaintiff in prosecuting the action; (2) whether the defendants have been unjustly enriched; (3) whether the award would be compensatory; and (4) whether there are countervailing equitable considerations which militate against an award of prejudgment interest.

*Krain*, 1986 U.S. Dist. LEXIS 21740, at 10 (*citing Feather*, 711 F. 2d at 540). Again, however, Latrobe's analysis of the relevant standard is flawed.

The entirety of Latrobe's discussion of the first element of this test is: "Plaintiff has not presented evidence to prove its diligence." It dismisses the second and third elements with nothing more than the following contention: "[b]ased on the record before the Court, Plaintiff has also failed to demonstrate that Defendant was unjustly enriched as a result of its breach and that the award of prejudgment interest would be compensatory." (Latrobe Memorandum at 5).

The record in this case belies Latrobe's assertion of Royal's lack of diligence. As soon as it became obvious to Royal (through Latrobe's refusal to acknowledge its premium obligation

after retaining Mr. Gordon) that Latrobe had no intention of paying the premiums it owed, Royal initiated this action in 2000. Since that time, as the Court is well aware, this has been an extremely hard-fought litigation extending over 5 ½ years, involving a docket with 175 filings and consuming thousands of hours of attorney time. Contrary to Latrobe's contention, the record in this case clearly evidences Royal's perseverance and diligence in collecting the debt owed to it.

That Latrobe has been unjustly enriched by its refusal to pay premiums for a decade is equally obvious. "Unjust enrichment occurs when a 'defendant has had the free use of the income-producing ability of plaintiffs' money without having to pay for it. . ." *Pension Benefit Guarantee Corporation v. Greene*, 570 F. Supp. 1483, 1503 (W.D. Pa. 1983). Furthermore, "the 'use-value' of the money, alone, may be sufficient for the granting of unjust enrichment." *Id.* Latrobe had the use of almost $927,000 of Royal's money for the first year; then it had the use of over $785,000 of Royals's money for the second year, and so on. Thus, it is beyond dispute Latrobe has had the free use of Royal's money, which alone is sufficient to establish unjust enrichment

Turning to the third prong of the *Krain* formulation, it is clear that, for the same reason that Latrobe was unjustly enriched by its withholding of premium payments, an award of prejudgment interest would clearly be compensatory – *i.e.*, to compensate Royal for the time value of money of which it was deprived by Latrobe's conduct. *See*, *Tiab Communications Corp. V. Keymarket of NEPA, Inc.*, 263 F. Supp.2d 925, 948-49 (M.D. Pa. 2003) ("Prejudgment interest would compensate [plaintiff] for the time-value of money which was due it under the obligation [defendant] assumed in 1995. This money was unavailable to [plaintiff] for investment or paying off its creditors."). Thus, Latrobe's unsupported contention that "Plaintiff

has also failed to demonstrate that. . . the award of prejudgment interest would be compensatory," should be rejected.

As to the fourth prong, Latrobe weakly argues that the fact that the policies remain open somehow supports an equitable argument against prejudgment interest. As set forth above at footnote 8, however, the fact that the policies are still open has no bearing whatsoever on previously earned retrospective premiums or on the interest due as a result of their non-payment. Latrobe also argues that equity counsels against an award of interest, because there was a legitimate dispute as to the parties' obligations. However, "[t]he fact that parties dispute liability does not preclude a grant of prejudgment interest." *Employers Reinsurance Corp. v. Jefferson Pilot Financial Insurance Co.*, 176 F. Supp. 2d 1183, 1192 (D. Kan. 2001). This, of course, makes sense. If a dispute between the litigants were a bar to the award of prejudgment interest, such interest would *never* be awarded – which is clearly not the case. As set forth above in the discussion of unjust enrichment, Latrobe's conduct in this case creates an overwhelming equitable basis for the award of prejudgment interest.

**Conclusion**

For the reasons set forth above, Royal is entitled to an award of prejudgment interest that has accrued on eleven unpaid retrospective premiums. Because those premiums were "ascertainable by mathematical calculation from a standard fixed in the contract," within the meaning of governing case law, Royal can collect such interest as of right.

In the alternative, Royal urges this Court to exercise its discretion to award such interest to Royal in order to compensate it for the loss of the use of its money during the long delay in

payment that occurred despite its diligence in seeking a recovery. Such interest would also prevent Latrobe from being unjustly enriched.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

By: s/Bruce C. Fox

Bruce C. Fox, Esquire
bruce.fox@obermayer.com
Pa. I.D. No. 42576
Rudy A. Fabian
rudy.fabian@obermayer.com
Pa. I.D. No. 56703
Obermayer Rebmann Maxwell & Hippel LLP
One Mellon Center, Suite 5240
Pittsburgh, PA 15219
(412) 566-1500
F: (412) 566-1508

Date: June 14, 2006

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has on the 14th day of June, 2006, served a copy of the within *Plaintiff's Reply Brief In Support of Plaintiffs' Entitlement to Pre-Judgment Interest* upon the person and addressed as listed below:

Mark Gordon, Esq.
Pietragallo Bosick & Gordon
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219

s/Bruce C. Fox_____________
Bruce C. Fox