IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No. 00-2128 |
| v. | ) Magistrate Judge Caiazza |
| LATROBE CONSTRUCTION COMPANY, | )<br>)<br>) |
| Defendant. | ) |

### PHASE II FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having conducted Phase II of the bench trial in this case, the court now enters these findings of fact and conclusions of law.

Unless otherwise specified, the entries below are made by the court sitting as the finder of fact.

**A.    The Effects of Claims Mishandling Regarding the Four Remaining Claimants**

The court accepts as credible Mr. Weber's testimony that: the claims mishandling in Peksa caused no harm, *see* Tr. at 176.10-11; it caused $3,855.24 in excess incurred losses in Freed, *id.* at 176.13-14; and $53.17 in Jury, *see id.* at 176.16-17. On the record as a whole, the court attributes $58,303.96 in excess incurred losses to Depree. *See generally id.* at 176.28-29, 176.33-34.

The court accepts Mr. Chimenti's testimony that: no increase in retrospective premiums are attributable to Peksa or Freed, *see* Tr. at 176.52; and the increase attributable to Jury is $61.00, *see id.* at 176.53-54. Using Mr. Chimenti's formula, which was not refuted by

the Defendant and hereby is accepted by the court, the increase in retrospective premiums attributable to Depree is $67,277.00.  *Compare id.* at 176.54 ("take the amount of the harm and multiply it by 1.1539") *with* discussion *supra* (finding increase in incurred losses of $58,303.96).

The court accepts Mr. Chimenti's opinion that, prior to Phase I (and based on the 2002 loss-runs), the retrospective premiums due were $851,549.00.  *See* Tr. at 176.48.[1]  Subtracting the excess premiums attributable to the mishandling in Jury and Depree, Royal is entitled to $784,211.00 in retrospective premiums.

**B.**     **Prejudgment Interest**

As a matter of law, the court concludes Royal is not entitled to prejudgment interest under the liquidated damages theory.  *See generally* Black Gold Coal Corp. v. Shawville Coal Co., 730 F.2d 941, 943 (3d Cir. 1984) (applying Pennsylvania law regarding prejudgment interest as of right based on liquidated sums).  Of the four categories of contract discussed in Black Gold, the only one conceivably applicable here is the third, which grants prejudgment interest if "the [contract] value . . . is ascertainable by mathematical calculation from a standard fixed in the contract."  *See id.*[2]

Although the retrospective premiums here are based on contractually established mathematical values, the court cannot agree that the Policies were "liquidated" as contemplated

---

[1] As fact finder, the court agrees with Latrobe that Royal's damages should be calculated based on the 2002 loss-runs, not subsequent ones.

[2] In its opening brief, Royal sought to invoke the first and fourth prongs in Black Gold, regarding contracts for "a definite sum of money" or whose value is "ascertainable from established market prices."  *See* Pls.' Br. (Doc. 165) at 5.  The inapplicability of these standards would appear obvious on their face.  Royal addresses the third prong only in its reply brief, *see* Doc. 179 at 2, a practice long disfavored in the law.

in Black Gold. *Cf. id.* at 943 ("[a]lthough [the relevant Restatement] section . . . does not use the term 'liquidated damages,' the concept is implicit"). Significantly, the amount of retrospective premiums owing could be, and were, quite variable based on the amount of incurred losses experienced. A "good" year for the insured (*i.e.*, few incurred losses) would result in an assessment of the policy's minimum premium, a "bad" year (*i.e.*, catastrophic losses) the maximum, and a whole range of results were possible between. *See generally* Tr. at 124.58-59 (Raabe) & 124.82-83 (Chimenti).

Not only were the retrospective premiums variable, but so too are any appropriate reductions based on breaches of the insurer's duty to reasonably handle the underlying claims. As previously explained, the mere fact that the insurer mishandled certain claims does not mean all retrospective payment obligations were extinguished. *See* Findings & Conclusions at Phase I (Doc. 157) at 18-19 ("simply because an insurer mishandles a claim, it does not follow that said claim has *no* value for the purposes of the retrospective premiums calculation"). To the contrary, the premiums are reduced to varying degrees based on the varying degrees of harm suffered as a result of the claims handling errors. *See generally id.*

The primary purpose of this litigation has been to determine whether Royal mishandled claims and, if so, the degree to which the mishandling reduced Latrobe's retrospective premium obligations. Some claims mishandling has been found, it caused reductions in the premiums owed, and the court's award necessarily deviates from the pure mathematical values contemplated in the Policies. The facts and circumstances just described are not consistent with the spirit and intent of the "liquidated damages" theory, and prejudgment interest will not be granted as a matter of right.

The court will, however, award prejudgment interest through an exercise of its discretion. *See generally* Feather v. United Mine Workers of Amer., 711 F.2d 530, 540 (3d Cir. 1983) ("[i]n a proceeding involving unliquidated damages, . . . the decision whether to award prejudgment interest is committed to the sound discretion of the district court"). The four relevant factors are: (1) the plaintiff's diligence in prosecuting the action, (2) whether the defendant has been unjustly enriched, (3) whether the award would be compensatory, and (4) whether countervailing equitable considerations militate against the plaintiff's request. *See id.* (citation omitted). In this case, prejudgment interest is appropriate under factor (1) because the Plaintiffs have been diligent in prosecuting the action, and under (3) to compensate Royal for the time-value of money owed. *See id.*; *see also* Tiab Commc'ns Corp. v. Keymarket of Nepa, Inc., 263 F. Supp.2d 925, 947-48 (M.D. Pa. 2003) (time-value of money favors compensatory goal).

The fourth factor disfavors, however, a grant of prejudgment interest dating back to Royal's demand letter in January 1996. Going back that far would be to award over ten years of prejudgment interest based on Policies finally expiring in 1995. A nearly five-year gap fell between the 1996 demand letter and Royal's institution of suit on October 30, 2000. During this extraordinarily lengthy delay, the parties negotiated the dispute and, apparently, those efforts only became sufficiently unproductive in late 2000 for the Plaintiffs to finally bring suit.

The court finds it inequitable to tax Latrobe with the nearly five year period of pre-suit activity. If Royal's January 1996 demand letter was expected to carry legal significance, it was incumbent upon the insurer to more expeditiously press its legal rights before a court of competent jurisdiction.

A more common-sense, equitable approach is to assess prejudgment interest from the date of Royal's filing. Only then did it become clear the insurer intended to invoke formal legal proceedings and had abandoned hope of an amicable resolution. Through an exercise of discretion, then, the court will assess prejudgment interest from October 30, 2000 until the date of this ruling. *See* discussions *supra* (in unliquidated damages case, prejudgment interest is left to court's discretion and accounts for equitable considerations); *see also generally* 10 Standard Pennsylvania Practice 2d § 65:147 (2006) ("[t]he fairest way for a court to decide questions pertaining to [prejudgment] interest is according to a plain and simple consideration of justice and fair dealing").[3]

Plaintiffs' counsel asserts, and the Defendant does not contest, that prejudgment interest is calculated as simple interest at a rate of six percent per year. *See* Pls.' Br. at 3 (citing 41 Pa. Cons. Stat. § 202 (1991)). The Plaintiffs' proposed formula for calculating the interest also remains unopposed:

$$\text{amount owed} \times \text{number of days of interest} \times \underbrace{.000164}_{\text{(daily interest rate)}} = \text{interest due}$$

*See generally id.* at 6.

---

[3] The long delay between Royal's 1996 demand letter and the initiation of this lawsuit distinguishes the case law holding that interest runs from the date of the demand. The court also notes that, although Royal has been diligent during the course of this litigation, it has introduced no evidence establishing its diligence before filing. *See* discussion *supra* (addressing diligence factor). Although the court expressly declines to find a lack of diligence in this context, the evidentiary gap likewise disfavors an award of interest dating back to 1996.

Here, the figures are as follows:

| $784,211.00 | X | 2083 | X | .000164 | = | **$267,896.00** |
|---|---|---|---|---|---|---|
| amount owed | | number of days of interest[4] | | (daily interest rate) | | (rounded up) |

Accordingly, the court will award prejudgment interest in the above sum.

**C.     Conclusion**

Based on all the analyses, findings, and conclusions at Phases I and II of this bench trial, and by a preponderance of the evidence, the court concludes that judgment should and will be entered in favor of the Plaintiffs and against the Defendant in the amount of $1,052,107.00. A contemporaneous final judgment order will issue this same day.

THESE FINDINGS AND CONCLUSIONS ARE SO ENTERED.


July 14, 2006

                                                          *[signature]*
                                                          Francis X. Caiazza
cc (via email):                                           U.S. Magistrate Judge
Bruce C. Fox, Esq.
Kathleen G. Sheehan, Esq.
Mark Gordon, Esq.
Timothy R. Smith, Esq.

---

[4] From October 30, 2000 until today is 2083 days. *See* "Date Calculator Page" at website, http://cgi.cs.duke.edu/~des/datecalc/datecalc.cgi.